## ROBERT B. GRIFFIN and WILLIAM LEE, *vs.* ELIPHALET H. MERRILL.

A bill prayed for an account of the concerns of *two distinct* partnerships. *One of* the defendants was a *partner in both* firms, but the *other* was *only* a partner in the *latter firm.* HELD:

That this bill is *multifarious*, even though the *latter firm, as such,* became *agent* for collecting and disburing the outstanding debts of the former firm, there being no good reason shown why an account should be taken in reference to the affairs of such agency.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

This appeal was taken from an order of the court below, (FRICK, J.,) overruling the demurrers of the appellants to a bill filed against them by the appellee. Each defendant filed a separate demurrer upon the ground of *multifariousness.*

The bill alleges, in substance, that in February 1847, complainant purchased out the interest of Yeatman and Bayles in a firm composed of Yeatman, Bayles and Griffin, then trading in Baltimore city under the name of "Griffin, Yeatman &

Co.," each partner being equally interested in the business; *that* Griffin was, at the time of this purchase, indebted to the firm for money withdrawn for his private purposes; *that* the assets consisted of a stock in trade and outstanding debts, which complainant was led to believe would be adequate to meet the liabilities of the firm, but though the stock was sold on the most advantageous terms and the collection of the debts diligently attended to, as hereinafter stated, the sum produced did not pay such liabilities by a large amount, which complainant has paid by advances from his private means; *that* Griffin has not assisted him in paying these liabilities, nor paid his own indebtedness to the firm, nor his proportion of such advances, and that a large proportion of the outstanding debts have proved desperate and cannot be collected; *that* immediately after this purchase complainant formed a copartnership with Griffin and Lee, under the name of "Griffin & Co.," for the purpose of continuing the business of "Griffin, Yeatman & Co.," and it was agreed that "Griffin & Co." should, and they, in fact, *did,* purchase the stock in trade of "Griffin, Yeatman & Co.," at a valuation and transfer to their books the debts due "Griffin, Yeatman & Co.," and collect them without charge, and pay with the money so collected, as far as it would go, the debts due by "Griffin, Yeatman & Co.;" *that* there was no written copartnership, but it was understood that complainant, Griffin and Lee should be equal partners, and that Griffin and Lee should give their whole time and attention to the business, and the complainant, by his capital and credit, sustain and further the interest of the firm, and, in accordance with this agreement, the business was conducted during the continuance of the firm of "Griffin & Co.," from February 1847 to July 1848, when it was dissolved by mutual consent, Griffin and Lee having the sole management thereof, and the complainant making advances to meet its liabilities for which he was to be reimbursed; *that* after this dissolution the complainant, by agreement with his former partners, took into his possession the books and papers of the firm, for the purpose of collecting the outstanding debts due the firm, and applying the proceeds to pay its liabilities or to reimburse himself the

Griffin & Lee, *vs.* Merrill.

advances he had made for that purpose, and that he diligently attended to such collection so long as he resided in Baltimore, and on removing to New York, where he now resides, it was agreed between him and his late partners, that said books and papers should be placed in the hands of "J. D. Pratt & Co.," of Baltimore, for the purpose of collecting the debts still outstanding and paying the proceeds to the complainant, to reimburse him for his aforesaid advances; *that* Pratt & Co. have used every effort to collect these debts, and have collected and paid over to complainant considerable sums of money on account thereof, all of which, as well as that collected by himself, is duly credited on the books of the firm and charged to the complainant; *that* said books and papers are still in the hands of Pratt & Co., who are still endeavoring to collect the debts remaining unpaid, and who represent that most of them are desperate and cannot be collected; *that* the stock in trade of "Griffin & Co.," at the time of said dissolution, was advantageously disposed of and the proceeds duly applied to pay the debts due by them.

The bill then further charges, that during its existence, and since the dissolution, of the firm of "Griffin & Co.," complainant has paid from his private means, over and above all receipts from the assets of both firms, large sums of money, and has used all diligence in collecting and rendering available such assets to pay the debts due by these firms, or to reimburse himself for advances made for that purpose, and has duly charged himself on the books with all money collected by him, or which has been paid over to him by Pratt & Co.; *that* he has long waited in the hope that he would be reimbursed from these assets, but finding most of the debts still due to be desperate, he believes little or nothing more can be realized from them, and that the advances for which he has not been reimbursed amount to about $20,000; *that* Griffin and Lee are largely indebted to "Griffin & Co." for money withdrawn for their private use, and have not assisted the complainant in paying debts, nor reimbursed him for his advances for that purpose.

The bill then prays for an account of the partnership busi-

ness of *"Griffin, Yeatman & Co.,"* to the time complainant purchased the interest of Yeatman and Bayles; also for an account of the receipts and disbursements of the firm of "Griffin & Co.," on account of that of "Griffin, Yeatman & Co.," and of Griffin's liability for money withdrawn by him, and for losses in conducting the business of *"Griffin, Yeatman & Co.,"* and his indebtedness therefor to the complainant; also for an account of the business of "Griffin & Co.," and that the debts still due them may be disposed of by sale or otherwise, and that a decree may be passed for payment to the complainant of such sums as may be found to be due him by Griffin and Lee upon the settlement of the accounts of the business of both firms, and for general relief

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK J.

*Geo. Wm. Brown* for the appellants, argued:

1st. That the bill is clearly liable to the objection of *multifariousness.* In its stating part it confounds matters distinct and unconnected, and charges several matters of distinct nature against the respondents. Lee had no connection whatever with the firm of *"Yeatman, Griffin & Co.,"* and cannot be called on to account for any matter connected with that firm. Griffin is liable to account, as he was a partner in both firms, but Lee is only connected with the *latter.* The bill, therefore, has reference to subject matters which affect the respondents in *different degrees,* and its prayer demands several matters of distinct natures, against the respondents. The case is, in all essential respects, similar to that of *White vs. White, 5 Gill,* 359, where the objection of multifariousness was sustained. See, also, *Story's Eq. Pl., sec.* 271, *note,* and 272. 1 *Daniel's Ch. Pr.,* 383, *note.* 5 *Paige,* 65, *Boyd vs. Hoyt.* 6 *Do.,* 22, *Swift vs. Eckford.* If Lee was a proper party on the ground of *agency,* then, on the same principle, Pratt & Co. should have been made parties to the bill.

2nd. That the order of the court, overruling the demurrer and ordering the respondents to answer over, may be appealed

from.  5 *Gill*, 359.   A demurrer to a bill for multifariousness, like a demurrer for a misjoinder at common law, goes to the whole bill, and, if allowed, the bill must be dismissed and cannot be amended.  5 *Paige*, 65.   6 *Do.*, 22.   2 *G. & J.*, 14, *Gibbs vs. Clagett.*   2 *H. & G.*, 386, *Wolf vs. Wolf.*   1 *Md. Rep.*, 266, *Thomas vs. Doub.*   2 *Do.*, 176, *Williams vs. West.*   3 *Do.*, 555, *Ware vs. Richardson.*   4 *Do.*, 76, *Maddox vs. White.*

*Thos. S. Alexander* for the appellee, argued :

That the demurrers were properly overruled.   The firm of Griffin & Co. having agreed to act as agent in settling up the business of the firm of Griffin, Yeatman & Co., and having transferred the accounts from the books of the last firm into its own books, the taking of this agency account is indispensable to the adjustment of the accounts of Griffin & Co.   It may be true, in the abstract, that Lee has no direct interest in the state of the accounts of the firm of Griffin, Yeatman & Co., at the period of its dissolution, or of the account between that firm and the appellee, as its settling partner, but when it is considered that the firm of Griffin & Co., in assuming the duty of liquidating agents of the firm of Griffin, Yeatman & Co., undertook to distribute the surplus effects of that firm between the parties in just proportions, and that the appellee was occasionally collecting debts and supplying funds for the discharge of the liabilities of the last named firm, and that after the dissolution of the firm of Griffin & Co., the business of the two firms became yet more blended in the hands of the appellee as settling partner, it would seem most convenient that all the accounts should be taken in one cause, in order that the fund in hand may be distributed according to the ultimate equities of the respective parties.   The appellant, Griffin, and the appellee have a direct interest in the entire account asked for by the bill.   It would be difficult to show that Lee would be exposed to any inconvenience in the taking of that account, and, on the other hand, a state of things may be imagined in which his interest would be advantaged thereby. The firm of Griffin & Co. may be indebted to the firm of

*Griffin, Yeatman & Co.;* Griffin may be indebted to the firm of Griffin & Co., and in advance to the firm of Griffin, Yeatman & Co.; if the account is taken as prayed for by the bill, Lee may insist that the balance due from Griffin & Co. to Griffin, Yeatman & Co., to the extent of Griffin's interest, shall be applied to the discharge of his indebtedness to Griffin & Co. This case is, therefore, as I think, clearly distinguishable from that of *White vs. White,* 5 *Gill,* 359, and as sustaining these views, see 1 *Myl. & Cr.,* 624, *Campbell vs. Mackay.* 3 *Do.,* 85, *Attorney General vs. Cradock.* 4 *Do.,* 17, *Attorney General vs. Parr,* and same case in 8 *Clark & Finnelly,* 434. 6 *Sim.,* 251, *Lewis vs. Edmund.* 11 *Do.,* 283, *Brown vs. Douglas.* 5 *Beav.,* 546, *Benson vs. Hadfield,* and same case in 4 *Hare,* 32. 2 *Younge & Coll.,* 430, *Davis vs. Cripps.* 4 *Hare,* 9, *Lund vs. Blanshard.* 2 *Coll.,* 316, *Boyd vs. Moyle.* 2 *Chitty's Digest,* 1612, citing 10 *Jur.,* 833, *Sanders vs. Kelsey. Story's Eq. Pl.,* sec. 539. 2 *How.,* 619, *Gaines vs. Chew.* 3 *Do.,* 333, *Oliver vs. Piatt.* 5 *Do.,* 127, *Nelson vs. Hill.*

ECCLESTON, J., delivered the opinion of this court.

The appellants insist, that the demurrers should have been ruled good, upon the ground that the bill is multifarious. In support of which position they rely, with much confidence, upon *White et al., vs. White,* 5 *Gill,* 359. There the bill prayed for an account of the concerns of several distinct partnerships, some of the defendants not having been partners in all the firms; and there being nothing to show that either firm, as such, had any agency in regard to the concerns of the others, or of either of them. Henry White, (one of the defendants,) is said to have been the financier and agent, for many purposes, of the various firms, but he had never been a partner in either. The bill was finally dismissed, by the Court of Appeals, for multifariousness. And the facts we have mentioned had much, if not the controling influence, in that decision.

Under the demurrers we are, of course, to consider the statements contained in this bill, to be true.

47      v.10

The defendant, Lee, was not a partner in Griffin, Yeatman & Co., but was in Griffin & Co. On the dissolution of the former, their stock in trade was purchased at a valuation, and paid for by the latter, as we understand the bill. It also, appears to have been agreed, that the debts due to Griffin, Yeatman & Co., should be transferred to the books of Griffin & Co., which they were to collect without charge, and with the money so collected, were to pay as far as it would go, the debts of Griffin, Yeatman & Co., or reimburse to the complainant the money advanced by him out of his private means for that purpose. Speaking in reference to the purchase of the stock in trade, and the debts to be collected, the bill says: "And in fact the said Griffin & Co. did so purchase the said stock in trade, and transfer said accounts of Griffin, Yeatman & Co. to their books, and collect said debts, and pay, as far as the money would go, the said debts." In a previous part of the bill, it is said: "That the assetts of said partnership of Griffin, Yeatman & Co., consisted of their stock in trade, and outstanding debts, which, as your orator was led to believe, and suppose, would be of sufficient value to meet the liabilities of said firm, but although the said stock was sold on the most advantageous terms, and the collection of said debts diligently attended to, as is hereinafter more particularly set forth, the sum produced did not pay the debts of said firm by a large amount, which your orator has paid out of his own private means; and that the said Robert B. Griffin has not assisted your orator in paying said liabilities, nor has he paid his own indebtedness to said firm, nor his proportion of the money expended by your orator in paying said liabilities; and that a large proportion of said outstanding debts have proved desperate and cannot be collected."

The firm of Griffin & Co. was dissolved in July 1848, and the bill says: "Your orator further showeth, that after the dissolution of said firm, your orator, by agreement with his said partners, took into his possession the books and papers of said firm, for the purpose of collecting the outstanding debts, and applying the money received from them to the liquidation of the liabilities of said firm, so far as it would go, or of reim-

bursing himself for money advanced by him for that purpose; and that he diligently attended to the collection of said debts so long as he resided in said city, and on removing to the city of New York, where he now resides, it was agreed by and between your orator and his said late partners, that the said books and papers should be placed in the hands of Messrs. J. D. Pratt & Co., of the said city of Baltimore, for the purpose of collecting the debts of said firm still outstanding, and paying to your orator the proceeds of such collection to reimburse him for advances made to pay the liabilities of said firm.''

The bill likewise states, ''that the said J. D. Pratt & Co. have used every effort to collect said debts, and have collected and paid over to your orator considerable sums of money on account thereof, all of which as well as money collected by your orator from said outstanding debts is duly credited on the said books of said firm, and charged to your orator. That the said books and papers are still in possession of the said J. D. Pratt & Co., who are still endeavoring to collect the debts remaining unpaid, and who represent to your orator, that the most of them are desperate and cannot be collected. And that the stock in trade of the said Griffin and company, at the time of said dissolution, was advantageously disposed of and the proceeds thereof duly applied to the discharge of the debts due by them.''

The appellee considers this bill not liable to objection, on the ground of multifariousness, under the decision of *White, et al., vs. White,* although Lee was not a member of the first firm. There is said to be a material difference between that case and this, because here, Lee was a partner in Griffin & Co., which firm, *as such,* became agents for collecting and disbursing the outstanding debts of Griffin, Yeatman & Co. This agency of the firm, in which Lee was a member, is supposed to distinguish this case from the one referred to, where the only agent spoken of is Henry White, who never had been a member of either partnership. But admitting this distinction to exist, still the fact of the agency now relied on cannot render it either necessary or proper, that Lee should be required to unite with Griffin in accounting, with regard to the

Griffin & Lee, *vs.* Merrill.

concerns of the first firm, unless it appears there is some good reason why he should so account in reference to the affairs of the agency. And we see no such reason.

The bill shows plainly, that the debts which Griffin & Co. were to transfer to their books, for the purpose of collecting and disbursing on account of the first firm were so transferred; the collection was *diligently* attended to, and the money received, was paid over according to agreement; leaving uncollected only such of those debts as were desperate and could not be collected.

Although the bill may show a liability to, and a necessity for accounting with, the complainant, on the part of the two defendants, in reference to the concerns of the second firm; and also on the part of Griffin, in regard to the affairs of the first, still the facts stated do not exhibit any indebtedness to, or necessity for accounting with, the complainant, by the *second firm*, or by Lee as a member thereof, or in any character, in reference to an agency, or any matter arising from, or connected with, the firm of Griffin, Yeatman & Co. On the contrary, the bill shows, that the stock in trade purchased by the last partnership was paid for, that their collecting agency was faithfully attended to, and the proceeds duly applied, they having collected all the debts, and paid over the money, except such as were desperate and could not be collected.

It likewise appears that, after the dissolution of the second firm, by mutual consent, the complainant, by agreement of the parties, took possession of the books and papers of the firm, for the purpose of collecting the outstanding debts and applying the money arising from them; that subsequently, with the consent of the parties, the said books and papers were put into the possession of J. D. Pratt & Co., for the purpose of collecting the debts still outstanding and paying the proceeds over to the complainant, to reimburse him for advances made on account of the liabilities of the said firm of Griffin & Co.; which books and papers still remain in the hands of J. D. Pratt & Co. .

Demurrers to the bill were filed in *White, et al., vs. White,* and overruled by the court below; which decision was reversed

by the Court of Appeals, and the bill dismissed. According to the principles there established we consider the present bill liable to objection for multifariousness, and that the court were wrong in overruling the demurrers; consequently, a reversal of their decision, and dismissal of the bill, must necessarily follow, but without prejudice and without costs.

*Reversed and bill dismissed.*