(Decided 20th December, 1872.)

---

JACOB FIERY, and others, *vs.* BENJAMIN H. EM-
MERT, and others.

*Multifariousness — Equity Pleading — Corporation —*
*Right of Stockholders in a Manufacturing com-*
*pany, to invoke the aid of a Court of Equity to*
*compel the Payment of unpaid Subscriptions.*

The objection of multifariousness to a bill in equity, must be confined to cases where the demand against each particular defendant is entirely distinct and separate in the subject-matter, from that in which other defendants are interested, and does not apply where there is a common liability in the defendants, and a common, although not a co-extensive, interest in the complainants.

A bill was filed in equity by shareholders in a manufacturing company, incorporated under the general incorporation law, against other shareholders, for the purpose of ascertaining the amount of capital subscribed, by whom subscribed, the amounts paid thereon, by whom paid, and to enforce the payment of the same; to ascertain the debts of the company, for the payment of which the stockholders were liable, under the Act of incorporation, to the amount of capital stock subscribed by them respectively, and on account of which suits had already been instituted against the complainants, and to compel a ratable con-

tribution by all the stockholders towards the payment of the same. On a general demurrer to the bill, it was HELD:

1st. That in regard to the several matters charged in the bill, the complainants and defendants had a common interest and a common liability, to the extent of their individual subscriptions, and the bill therefore was not multifarious.

2d. That the bill having alleged that the entire amount of the capital stock of the company was not subscribed, it ought to have charged that the several stockholders, defendants, had, by their participation in the organization of the company, or by other acts, waived their right to rely upon such partial subscription of the capital stock as a defence to their liability, and the failure to so charge was a fatal defect in the bill.

3d. That the corporation ought also to have been made a party to the suit.

So long as a corporation has the power to increase its subscriptions, to call in more capital and resume its business, the mere allegation that its debts are largely in excess of its assets, and that it has conveyed its property in trust to pay the same, does not warrant a Court of Equity in treating it as *ipso facto* dissolved.

Where the property of a manufacturing company, incorporated under the general incorporation law, has been assigned in trust to pay certain of its indebtedness, and creditors are seeking their statutory remedy against the stockholders, thus compelling them to pay the debts contracted and due by the company, a Court of Equity has the right, at the instance of such stockholders, to compel subscribers to pay the amounts of their several subscriptions, in order that the common assets of the company may be realized and applied to their legitimate purposes, and the stockholders relieved to that extent from a liability to which they are exposed, and which should be borne alike by each; and further, that there may a *pro rata* apportionment of liability and contribution on account thereof, in proportion to the capital stock held by them respectively; and under such circumstances stockholders are not obliged to wait until judgments are recovered against them, and payment thereof enforced.

APPEAL from the Circuit Court for Washington County, in Equity.

The bill in this case, the object and purport of which are stated in the opinion of the Court, was filed by the appellants, stockholders of "The Antietam Manufacturing Company of Washington county," who sued for themselves as for

all others, stockholders, who should come in and contribute to the expense of the suit, against the appellees, other stockholders of the company. Some of the defendants demurred generally to the bill, and by agreement of counsel, a *pro forma* decree dismissing it, was passed. From this decree the complainants appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*Albert Small* and *Attorney General Syester*, for the appellants.

The 52d section of Article 26, of the Code, (section 59 of Act of 1868,) declaring the individual liability of stockholders in manufacturing corporations does not *create* this liability. While granting to the corporation a special, qualified corporate capacity, with plenary powers for the purposes of its institution, it expressly continues for a definite period, and limits, as to amount, the personal liability, at common law, of the stockholders, for debts the company may contract. *Corning vs. McCullough*, 1 *Comstock*, 47.

The individual members of a company, organized under the provisions of the Code, stand, therefore, as to creditors, and as to each other, in the relation of co-partners with their several liabilities limited by the statute. As co-partners they are, at common law, liable jointly as to their joint funds, and separately in their personal and separate estate; the statute so modifies this liability as that their several and individual liability, for an ascertained and limited proportion of the debts of the company, is expressly continued, for the benefit of creditors, until the capital stock is fully paid, as required. *Corning vs. McCullough*, 1 *Comstock*, 47; *Erickson vs. Nesmith*, 46 *N. H.*, 371; *Allen vs. Sewall*, 2 *Wend.*, 327; *Ketchum vs. Bank of Commerce*, 3 *Am. Law Reg., O. S.*, 145; *Myers vs. Irwin*, 2 *S. & R.*, 368; *Harger vs. McCullough*, 2 *Denio*, 119; *Ex-parte Van Riper*, 20 *Wend.*, 614; *Moss vs.*

*Oakley,* 2 *Hill,* 265; *Bailey vs. Bancker,* 3 *Hill,* 188; *Clark vs. Perry,* 30 *Maine,* 148; *Hill, et al. vs. London and County Assurance Co.,* 1 *Hurl. & Norm.,* 400.

If however this individual liability—*a liability upon contract*—did not make the members of the company co-partners in a joint undertaking which, under the given conditions, the statute sanctions and clothes with this qualified corporate capacity, the dissolution which is declared in the latter clause of section 52, upon the failure of the company to comply with its requirements as to the payment of the capital stock, would remit them to the status they held before the making of the certificate, so far at least as to secure to creditors the resulting remedies against the individual stockholders. *Slee vs. Bloom,* 19 *Johns.,* 456, commented on in 2 *Kent's Comm.,* 311; *Briggs vs. Penniman,* 8 *Cow.,* 387; *Angell & Ames on Corporations,* sec. 773, (7th *Ed.*)

The Antietam Manufacturing Company having failed to obtain the subscription of its entire capital stock, and hence to secure the payment thereof as required by section 52, and having suffered its property and estates to be sold, thus defeating the object of its creation, is so far dissolved as to allow proceedings on the part of creditors to recover under the individual liability clause of this section. And as, with respect to any rights arising from or to this company, whether a corporation *de facto* or *de jure,* a stockholder who is a creditor is clothed with equities equal to those of any other creditor; (*Matthews vs. Albert,* 24 *Md.,* 527;) this dissolution will allow proceedings on the part of stockholders to have a judicial declaration thereof, and to wind up its affairs in order to ascertain its indebtedness, and to procure the due administration, by a Court of competent jurisdiction, of all the assets applicable to the payment of creditors. *Slee vs. Bloom,* 19 *Johns.,* 456; *Briggs vs. Penniman,* 8 *Cow.,* 387; *Angell & Ames on Corp.,* sec. 773.

The bill does not pray a dissolution of the corporation, nor is it deemed necessary for the purposes of this action. The

terms of the statute leave but the happening of this particular event (the non-payment of capital stock) to be found, to entitle any one—creditor or stockholder—to any one or all of the consequences of a dissolution; and the obligation is devolved upon the Court, (the truth of the allegations of the bill, touching this matter, being admitted by the demurrer,) of judicially declaring the virtual relinquishment of the corporate rights and franchises, and the consequent dissolution of the corporation *for the sake of the remedies, existing at common law, against the individual members, and in favor of creditors.*

But as this liability is a several liability for a ratable and equal share of the debts, in proportion to the whole debts and the whole capital stock, and not a liability to each creditor until he is paid, limited only by the amount of stock held by the stockholder who may chance to be sued, or of whom the demand is made; (Matter of *Hollister Bank of Buffalo*, 27 *N. Y.*, 393; *Nixon vs. Brownlow*, 1 *Hurl. & Norm.*, 407;) as between themselves stockholders are entitled to contribution to the payment of any or all debts for which any one or more, by reason of the action of creditors, may have become immediately or specifically liable. *Erickson vs. Nesmith*, 46 *N. H.*, 371; *Matthews vs. Albert*, 24 *Md.*, 527; *Garrison vs. Howe*, 17 *N. Y.*, 458.

Inasmuch, then, as between partners, the right of action to one against his co-partners arises whenever it becomes clear that the assets of the co-partnership, if administered, are insufficient to meet the liabilities, and one is compelled to pay; or if there be no assets, whenever a demand is made upon any one for the payment of outstanding liabilities; (*Adams' Equity*, 243, (*t. p.* 520;) *Erickson vs. Nesmith*, 46 *N. H.*, 371; *Vose vs. Grant*, 15 *Mass.*, 505; *Wright vs. Hunter*, 1 *East.*, 20;) it is competent for any member, in view of the situation disclosed by the bill, to invoke the aid of equity to secure an account of the partnership. *Walworth vs. Holt*, 4 *Mylne & Craig*, (18 *Eng. Ch. Reps.*,) 634; *Hichens vs. Congreve*, 4 *Rus.*, 562; *Knowles vs. Haughton*, 11 *Vesey*, 168.

Nor is it necessary that some one must be damnified by being required to pay; it is sufficient if there be a clear legal liability to pay. 1 *Pars. on Cont.*, 32; 1 *Spence's Eq. Jurisp.*, 662; *Garrison vs. Howe*, 17 *N. Y.*, 458, per *Denio J.*, in construing *Bank of Poughkeepsie vs. Ibbotson.*

There is no prayer for, and no process against the company, *eo nomine;* because the rights to be adjudicated, and the remedies to be applied, are those incident to a co-partnership and the integral parts—the individual stockholders—into which the company is resolved by its failure to comply with the provisions of the Code, are all brought in. There are no rights or property of the company apart from its members, which are sought to be effected by these proceedings, no dissolution being asked. The bill seeks the payment of balances due on stock, not toward the maintenance of a capital, or the exclusive use of the company, but toward the payment of debts for which the members are individually liable.

*Henry Kyd Douglas,* for the appellees.

The proceedings in this case is not a creditors' bill for the purpose of securing a debt under sec. 52 of Article 26 of the Code, and not such as was contemplated by the section in question. It is an anomally, and the cases referred to by the appellants are not applicable.

The "Antietam Manufacturing Company" is a corporation under the laws of Maryland, and the individual liability of the stockholders is definitely prescribed and limited by the provisions of the Code. The subscribers are not co-partners.

The company, as designated in the bill of complaint, is an incorporation under the laws of Maryland. If the defendants are liable in this proceeding at all, they are liable as stockholders in a corporation, and not as partners or *quasi* partners. Their personal liability depends solely on the provisions of positive law, which are to be construed strictly. *Fay vs. Noble,* 7 *Cushing,* 191; *Gray vs. Coffin, et al.,* 9 *Cush.,* 192; *Cochran vs. Arnold,* 58 *Penn.,* 404.

The bill is defective because the corporation is not made a party. Whether this is regarded as chiefly a suit to compel the payment of unpaid subscriptions, or to enforce contribution toward the payment of debts contracted by the company in its corporate capacity, the corporation itself should be made a party to the proceeding. The corporation should be made a party, because it only can answer and say what amount of stock has been paid up, whose subscriptions are yet unpaid, and what is the amount of indebtedness, and to whom. *Abbott's Digest, title, " Individual Liability,"* secs. 321, 323 ; *Maun vs. Pentz,* 3 *Comst.,* 415 ; *Bogardus vs. The Rosendale Manufacturing Co.,* 3 *Selden,* 147.

The bill is multifarious. This is evident from the synopsis of the number of things it prays for. *Barroll's Ch. Pr.,* 112 ; *Adams' Equity,* 309, (*margin ;*) *Ohio Life Ins. Co. vs. Merchants' Ins. Co.,* 11 *Humph.,* 1.

Stockholders cannot, either at law or in equity, sue their co-stockholders in their own name for unpaid subscriptions. The remedy of the corporation itself is simply at law to enforce payment by delinquent subscribers. Creditors, by sec. 22, Article 16 of the Code, are specially empowered to call a Court of Equity to their relief, when the unpaid subscriptions may pay their claims. But where does a stockholder derive his authority? If he enforced payment, would that be protection against a suit brought by the company? In the numerous cases referred to by the counsel for the appellants, the actions were instituted by creditors of the corporations.

The case of *Walworth vs. Holt,* 4 *Mylne & Craig,* 634, relied on by the complainants, arose out of a partnership. There was no incorporation, and some of the partners brought the other into Court to bring about a dissolution of the partnership, and to settle up the business of the firm. *Abbott, et al. vs. Merriam, et al.,* 8 *Cush.,* 588; *Gravenstine's Appeal,* 49 *Penn.,* 310.

The bill, so far as it seeks contribution, was filed too soon ; before the complainants had been damnified. The simple

fact that they had been sued did not justify them in rushing into a Court of Equity to sue all their co-subscribers. They were yet under no clear legal liability to pay, for the creditors who sued them might not be able to establish their claims or recover judgment. 1 *Parsons on Cont.*, 32.

Even if they had voluntarily paid the claims upon which they were sued, they would not have been entitled to contribution. *Cary vs. Holmes, et al.*, 2 *Allen*, 498; *Andrews vs. Callender*, 13 *Pick.*, 484.

The bill does not pray a dissolution of the corporation, nor charge that it has been dissolved. And yet the complainants ask for the appointment of a receiver. Surely it is the right of the defendants, and all parties concerned, to have the business of the company legally wound up, and its debts and assets ascertained; and this can only be done upon a dissolution of the corporation. In all the cases cited by the appellants, the complainants either declared the several corporations dissolved in law or in fact, or they prayed for a dissolution. *Briggs vs. Penniman*, 8 *Cowen*, 387; *Mickles vs. The Rochester City Bank*, 11 *Paige*, 118.

It will not do to say that the corporation was insolvent and in fact dissolved. It can only be dissolved by judicial sentence or by a surrender of its charter to the State. *Ches. & Ohio C. Co. vs. Balt. & Ohio R. R. Co.*, 4 *G. & J.*, 1; *New York Marbled Iron Works vs. Smith*, 4 *Duer*, 362; *Rollins vs. Clay*, 33 *Maine*, 132.

Moreover, if this corporation was dissolved in fact, then the bill of the stockholders would not lie against their co-stockholders, either for unpaid subscriptions or for contribution. Creditors might have a remedy, and they only.

ROBINSON, J., delivered the opinion of the Court.

This bill alleges that the Antietam Manufacturing Company was duly incorporated under the provisions of Article 26 of the Code, with a fixed capital stock of $150,000, of which about $91,000 was duly taken; that with this subscrip-

tion the company organized and incurred large debts for the purchase of real property, and the erection of buildings, neces-sary for the purposes of the company; that being so indebted, and for the purpose of securing the payment of the same, the company conveyed by deed of trust all of its property.

The bill further charges that the company is also largely indebted for labor done and machinery furnished; that the creditors, or some of them at least, have brought suits against the complainants, under sec. 52, of Article 26, to enforce the payment of the same; that the debts and liabilities of the company are largely in excess of its assets and property; and that other creditors will seek redress against the complainants and other stockholders, and prays for the following relief:

1. To compel stockholders to pay their subscriptions to the capital stock of the company.

2. To enforce contributions from all of the stockholders to the extent of the several claims, for the payment of which suits have been instituted against the complainants.

3. To ascertain the entire indebtedness by the company, and the apportionment of liability among the stockholders on account of the same.

4. For the appointment of a receiver, &c.

To this bill the defendants filed a general demurrer, and it is from the decree of the Court sustaining the demurrer that this appeal is taken.

In support of the demurrer, it is contended, in the first place, that the bill is *multifarious*. It may not be easy to lay down a rule of universal application, as to what constitutes *multifariousness*. It is a question resting somewhat in the discretion of the Court, under the circumstances of each case, in the exercise of which they will be careful to guard against a multiplicity of suits on the one hand, and the imposition of needless and oppressive costs on the other. As a general rule, however, we may say, that in order to sustain a demurrer to a bill on this ground, it must appear that several matters per-fectly distinct and independent are joined in the bill against

the same defendant, thus compelling him to unite in his answer and defend different matters wholly unconnected with each other; or the bill must contain the demand of several matters of a distinct and independent nature against several defendants, thus imposing upon each defendant the costs incident to the trial of several claims against the other defendants, with which he has no connection, and in which he has no interest. *Story's Equity Plead.*, 271, 280, 533; *Adam's Eq.*, 310. The objection must therefore be confined to cases where the demand against each particular defendant, is entirely distinct and separate in its subject matter from that in which other defendants are interested, and does not apply where there is a *common liability* in the defendants, and a *common*, although not *co-extensive interest* in the complainants. Here the bill is filed by shareholders in a manufacturing company, incorporated under the general corporation law, for the purpose of ascertaining the amount of capital subscribed, by whom subscribed, the amounts paid thereon and by whom paid; to enforce the payment of the same; to ascertain the debts of the company, for the payment of which the stockholders are liable, under the Act of incorporation, to the amount of capital stock subscribed by them respectively, and on account of which suits have already been instituted against the complainants—and to compel a ratable contribution by all of the stockholders towards the payment of the same. In regard to the several matters thus charged in the bill, the complainants and defendants have a common interest and a common liability, to the extent of their individual subscriptions, and we are of opinion, therefore, that the objection of multifariousness cannot be sustained.

In further support of the demurrer, it is insisted that the complainants have no right to invoke the aid of a Court of Equity for the purpose of compelling the payment of unpaid subscriptions. Ordinarily it is true, that the corporation is the proper party to enforce the payment of subscriptions to its capital stock, but it is equally true that the capital stock

of these manufacturing companies constitutes, in equity, a trust fund for the payment of creditors, and no one doubts the power of a Court of Equity to subject the entire property of the company to the payment of the claims of creditors. If, however, the property has been assigned, and creditors are seeking their statutory remedy against the stockholders, thus compelling them to pay the debts due by and contracted by the company, there is no good reason why a Court of Equity should not, at the instance of such stockholders, compel subscribers to pay the amounts of their several subscriptions, in order that the common assets of the company may be realized and applied to their legitimate purposes, and the stockholders relieved to that extent from a liability to which they are exposed, and which every principle of justice requires should be borne alike by each; and further, in order that there may be a *pro rata* apportionment of liability and contribution on account thereof, in proportion to the capital stock held by them respectively. Under such circumstances, stockholders are not obliged to wait until judgments are recovered against them and payment of the same enforced. To require this, would not only be oppressive, but in many cases might prove ruinous to parties. Their liability as shareholders to creditors of the company is an original liability, and their right to an apportionment of the same, under the averments in this bill, and under a proper state of pleadings, and to a ratable contribution on account thereof by all other stockholders, stands upon different grounds from those of a surety against a co-surety.

There is a defect, however, fatal to the bill in its present shape. It alleges that the capital stock of the company was fixed at \$150,000, of which only about \$91,000 was subscribed. Under such a charter we have heretofore decided that the liability of a subscriber for his subscription depended upon the whole capital stock being taken, unless by his acts or declarations, before or subsequent to the organization of the company, he has waived the right to set up this defence.

Fiery, *et al. vs.* Emmert, *et al.*

*Hughes vs. Antietam Man. Co.,* 34 *Md.,* 316. The bill ought to have charged that the several stockholders, defendants, had, by their participation in the organization of the company, or by other acts, waived their right to rely upon a partial subscription of the capital stock.

The corporation ought also to have been made a party to the suit. The bill does not allege that it has been dissolved, nor does it pray for a dissolution.

How far a company, by suffering acts to be done, totally destructive of the end and object for which it was incorporated, may be treated as having virtually surrendered its charter, or as dissolved, is a question not necessary to be decided in this case. It is well settled, that so long as a corporation has the power to increase its subscription—to call in more capital and resume its business, the mere allegation that its debts are largely in excess of its assets, and that it has conveyed its property in trust to pay the same, does not warrant a Court of Equity in treating it as *ipso facto* dissolved.

For these reasons the decree below must be affirmed, but we will remand the cause in order that the bill may be amended in conformity with the views herein expressed.

> *Decree affirmed and cause remanded*
> *for further proceedings.*

(Decided 20th June, 1872.)