## ISAAC E. EMERSON ET AL. *vs.* GEORGE R. GAITHER, RECEIVER.

*Bill in Equity by Receiver of Corporation to Hold Directors Accountable for Negligence or Illegality in Management— When Such Bill is Multifarious—Amendment of Bill—Limitations—Liability of Distributee of Deceased Director.*

Equity has jurisdiction of a suit by the receiver of a corporation against its former directors to hold them accountable for losses incurred in consequence of their negligence in the management of the corporation and their acts done in violation of statute.

There is a distinction between the right of a corporation to proceed against delinquent directors for their fraud or negligence in the conduct of the affairs of the corporation and the right of the shareholders to recover from directors for losses suffered by them in consequence of such fraud or negligence.

A bill was filed by the receiver of a bank against sixteen persons who had been directors of a bank at different times and against the executor and distributees of a deceased director.   The bill alleged that the directors during their respective periods of service had permitted loans in excess of one-tenth of the capital to be made to certain persons in violation of sec: 5200 of the Revised Statutes of the United States, also that dividends had been declared which were not justified by the financial condition of the bank.   The bill complained of thirty specific acts.   Some of the defendants were directors only while two of these acts were committed; other directors were connected with only three transactions, and one of the defendants with only four loans and one declaration of dividend alleged to have been illegal.   *Held*, that the bill is multifarious as to those defendants who had ceased to be directors when most of the alleged illegal acts were done, but it is not multifarious as to those defendants who were directors throughout the period covered by the bill, although many different causes of complaint are therein set forth.

When a bill in equity is multifarious as to some defendants and not as to others, it is not necessary to dismiss the bill *in toto*, but leave may be granted to the plaintiff to amend so as to remove the objection of multifariousness.

The Statute of Limitations is a bar to a bill against a director of a corporation to recover for his misconduct as such in improperly declaring a dividend, filed more than three years after he had ceased to be a director.

When a bill alleges that the defendant directors of a bank made certain loans in violation of statute but does not allege that the bank sustained any loss by reason thereof, and it is not shown when the loans were due, and the defendants ceased to be directors more than three years before the bill was filed, then the defense of the Statute of Limitations cannot be relied on under a general demurrer to the bill, since the cause of action would not necessarily accrue at the date of the loans, but the facts relied upon as entitling the defendants to the benefit of the statute must be set up by plea or answer.

A director of a corporation is not a technical trustee for the shareholders and creditors but is only an implied or constructive trustee, and the Statute of Limitations runs in his favor.

Upon a bill by the receiver of a bank against directors to recover losses incurred on loans made by them in violation of statute and for the improper declaration of dividends, then if the creditors of the bank have been paid, the receeiver is not entitled to recover for the benefit of the stockholders by reason of the declaration of the dividends, inasmuch as they were received by the stockholders.

When a bill by a receiver of a bank against the distributees of a deceased director to recover on account of his misconduct in the management

of the affairs of the bank does not state that the deceased director left any estate, or that those named as distributees had received anything from it, a demurrer to the bill should be sustained, since a bill should show on its face that the defendants are in some way liable to the plaintiff.

Appeal from the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Edgar H. Gans* and *Vernon Cook* (with whom was *D. Meredith Reese* on the brief), for the appellants.

*R. Lee Slingluff* (with whom were *Fielder C. Slingluff* and *Leon E. Greenbaum* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee was appointed receiver of the American National Bank of Baltimore, and by direction of the Comptroller of the Currency filed this bill against the directors of the bank and the executors and distributees of Frederick Walpert, deceased, who was in his lifetime a director. The defendants are sought to be held liable for a number of acts alleged to have been illegal and negligent—those particularly relied on being that they "knowingly suffered and permitted loans to be made in excess of one-tenth of the amount of the capital of said bank actually paid in," to certain persons and corporations named; that they declared and paid two dividends at times when the bank was in such condition that dividends could not be lawfully declared; and that they permitted the president and cashier to loan the funds of the bank to themselves, their relatives and companies in which they were interested in excessive amounts. The bill alleges that the bank became insolvent by reason of the negligence and acts of the directors and the losses thereby incurred. Demurrers were filed by several of the defendants, and they having been overruled these appeals were taken. The principal questions presented for our consideration are:

1st. Has a Court of equity jurisdiction to grant the relief prayed?

2nd. Is the bill multifarious?

3rd. Is the suit barred as to Frederick Walpert, who died more than three years before the bill was filed, and as to Isaac E. Emerson, who ceased to be a director more than three years before the filing of the bill?

4th. Are the allegations sufficient to make the distributees under the will of Frederick Walpert liable?

*First.* The authorities are not uniform as to how far a Court of equity has jurisdiction in suits by corporations, or their receivers, against directors who were guilty of negligence or of acts contrary to some statutory provision. It cannot be denied that there may be charges of mismanagment or negligenee, causing loss or injury to the corporation, for which there could be no reason for going into equity—the corporation having a complete and adequate remedy at law. In 3 *Clark and Marshall on Cor. Sect.,* 755, it is said that "the corp oration may maintain an action at law against them at common law—an action on the case—to recover damages," but those authors go on to say, "Or it may maintain a suit in equity when any special ground of equitable jurisdiction exists, as in a case where an accounting or discovery or injunction is necessary." JUDGE THOMPSON in the Article written by him on Corporations in 10 *Cyc.,* thus speaks of the subject on p. 836; "The proper remedy is said to be an action at law for damages, and not a bill in equity, where no accounting of the financial condition of the corporation is necessary to determine the extent of their liability. The jurisdiction of Courts of equity to compel unfaithful directors to account to the corporation, or to its representative, for frauds and breaches of trust has been well established since the time of LORD HARDWICKE; and unquestionably this is a proper forum in nearly all such cases, although this statement does not exclude the jurisdiction of Courts of law in cases appropriate for the exercise of that jurisdiction, the two remedies being often concurrent."

The Court of Appeals of New York has gone as far as any Court we are aware of in denying the jurisdiction of equity against delinquent directors at the suit of a receiver. It would be difficult to point out any substantial differences between the case of *Dykman* v. *Keeney*, 154 N. Y. 483, and the one now under consideration. That case followed *O'Brien* v. *Fitzgera'd*, 150 N. Y. 572, and *Empire State Bank* v. *Beard*, 151 N. Y. 638. It was conceded that some observations by the Judge who delivered the opinion in *O'Brien* v. *Fitzgerald*, 143 N. Y. 377 (when that case was first before the Court) indicated that such an action might lie in equity, but that was finally determined to the contrary on the later appeal. In *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52, the same Court said, "The liability of the directors of corporations for violations of their duty or breaches of the trust committed to them, and the jurisdiction of Courts of equity to afford redress to the corporation, and in proper cases to its shareholders, for such wrongs exist independently of any statute." That was a proceeding by a shareholder and in *Dykman* v. *Keeney*, it was referred to to show that an action in equity will lie by a shareholder, and it was said that there was "a wide and vital difference between such a case and one where the action is by the corporation against its delinquent directors." There is unquestionably a distinction between the two classes of cases, as a director is an agent of the corporation in its corporate capacity, and he accounts primarily with the corporation, which holds the legal title to the assets, but there is no privity at law between the stockholder and the directors, and hence when he can sue at all, a Court of equity is generally the proper tribunal in which to enforce his rights, which are equitable and not legal—unless the statute gives him the right to proceed at law. But while we must recognize that distinction, is the corporation, or its receiver to be denied that right under such circumstances as are alleged in this bill? There can be no doubt that the opinions delivered in *Booth* v. *Robinson*, 55 Md. 419, and *Fisher* v. *Parr*, 92 Md. 245, indicate that this Court has taken a position contrary to the New York cases, but it is contended

that the precise question raised by these demurrers was not involved in either of those cases. In *Booth* v. *Robinson*, JUDGE ALVEY, after stating that directors in joint stock corporations were not in the strict and technical sense of the term trustees for the stockholders, said: "They are, however, in one sense trustees, and they occupy a fiduciary relation to the corporation and its stockholders.   *   *   *   And if this relation and duty be violated, to the injury of the corporation or its stockholders, the law affords an ample redress for the wrong against the guilty parties." He then referred at some length to the case of *Charitable Corporation* v. *Sutton*, 2 Atk. 400, and said: "And in Sutton's case the Lord Chancellor held that directors of a corporation are liable in equity to the corporation, not only for gross frauds and breaches of trust, whereby the assets of the corporation are wasted, but are also liable to the corporation, if the assets of the corporation have been wasted by negligence on their part so gross as to amount to a breach of trust." After referring to *Spering's Appeal*, 71 Pa. St. 11, and other decisions, he added, "They all concur in holding that, in equity, the directors are personally liable for the consequences of their frauds or malfeasance, or for such gross negligence as may amount to a breach of trust, to the damage of the corporation or its stockholders." Then after showing that directors are not responsible for the consequences of mere unwise or indiscreet management, and pointing out the character of proof necessary to render them liable, the opinion proceeds, "In these cases the proper and primary party to complain and call the directors to an account, in a Court of equity, for fraud or breaches of trust, in the management of the affairs of the corporation, is the corporation itself; because the duty is owing, and the wrong is done directly to the corporation, and only indirectly to the shareholders." It then points out what is necessary to enable a shareholder to maintain a bill against directors for such fraud or breaches of trust.

So although that was a bill filed by stockholders, the cases cited and the reasoning of the Court tend to establish the right

of the corporation to sue in equity. The case distinctly holds, not only that directors are in a sense trustees and occupy a fiduciary relation to the corporation and its stockholders, but that their negligence may be so gross as to amount to a breach of trust. Then in *Fisher* v. *Parr*, which was a suit in equity by receivers against directors, JUDGE FOWLER said: "The law appears to be well settled, in this State at least, that a Court of equity has jurisdiction to entertain a bill filed by a corporation to enforce the personal liability of directors for the negligent performance of their duties, and that the corporation or its receiver is the proper and primary party to complain and call the directors to an account." It is true that the defendants did not specifically rely upon want of jurisdiction in that case, but some of the grounds of demurrer were broad enough to include that, and the Court did in fact pass upon the question. If a Court of equity had no jurisdiction to grant the relief prayed, it was idle to remand that case for further proceedings, and it will be observed that the dissenting opinion of the Chief Judge, which was concurred in by Judge Schmucker and the writer of this opinion, not only did not question the jurisdiction of a Court of equity to grant such relief under proper allegations, but referred to a number of cases which sustain the right of a corporation, or its representative, to sue in equity, including *Wilkinson* v. *Dodd*, 40 N. J. Eq. 123; *Spering's Appeal, supra; Sutton's Case*, 2 Atk. 400. It must therefore be admitted that in so far as this Court has indicated its views on the subject, it is not in line with the New York cases, but with those adopting a contrary doctrine.

There are many decisions elsewhere in which the Courts have recognized the jurisdiction of equity in such cases. In *Cockrill* v. *Cooper*, 86 Fed. 7, the Circuit Court of Appeals, through JUDGE THAYER, delivered a strong and convincing opinion on the subject, and referred to many authorities. In that case the suit was against a number of directors, and the personal representatives of others, whose terms of service were not identical. It was said that if a receiver must sue at law, it would not only require numerous actions, but "very likely several

separate actions would have to be brought against some of the directors, to comply strictly with the rules of procedure at law governing the joinder of parties," and that "It is also fair to infer from what is stated in the bill that the excessive loans therein complained of were inaugurated by one set of directors, and either continued, renewed, or enlarged by another, so that a suit brought against any one of the directors would probably involve an inquiry into the proceedings of the board of directors, and into many of the financial transactions of the bank for the entire period during which its affairs are alleged to have been mismanaged." In that case there was also the charge of declaring dividends in violation of the revised statutes, and it was said of that: "An investigation into the merits of this charge will necessarily involve a critical inquiry into the financial condition of the bank on each of said occasions; and as this Court held in *Hayden* v. *Thompson*, 36 U. S. App. 361, 369; 17 C. C. A. 592, and 71 Fed. 60, that is an inquiry which is peculiarly appropriate to a Court of Chancery, since an account of any considerable length or intricacy cannot be stated before a jury with that degree of fairness and accuracy which is necessary, or at least desirable, in a judicial proceeding." The learned Judge very forcibly showed why Courts of equity are best adapted to adjusting such controversies as usually arise between receivers of insolvent corporations and their directors or managers, and added that "In a Court of law there is always a greater probability that the guilty will escape detection, or that the innocent will be made to suffer for the wrongful acts of others "

Not only can a multiplicity of actions be prevented by a proceeding in equity to redress the wrongs complained of, which is a matter proper to be considered, but it would seem that complete justice to all parties can be thereby better assured than by suits at law. It would be practically impossible for a jury to properly dispose of all questions raised by this bill, and when the fiduciary relations which the directors occupy to the corporation is remembered there would seem to be no reason why Courts of equity should not have power to determine

such controversies—especially in this State where the tendency is to extend rather than limit the jurisdiction of Courts of equity. In addition to authorities already cited, we would mention the following which have either expressly or impliedly decided that Courts of equity have jurisdiction in such cases. *Briggs* v. *Spaulding*, 141 U. S. 132; *Robinson v. Hall*, 63 Fed. 222; *Hodges* v. *Screw Co.*, 1 R. I. 312; *Citizens Loan Assn.* v. *Lyon*, 29 N. J. Eq. 110; *Citizens B. & L. Assn.* v. *Coriell*, 34 N. J. Eq. 383; *Williams* v. *McKey*, 40 N. J. Eq. 189. Without deeming it necessary to more particularly state the allegations in this bill, we are of the opinion that the demurrers cannot be sustained on this ground.

*Second.* There is perhaps more confusion, real or apparent, in the authorities on the subject of multifariousness than any other connected with equity procedure. This is in part owing to the fact that there is no rule on the subject of universal application, and much is left to the discretion of the Court to be determined by the facts of each particular case. The tendency of the Courts has been to overrule the objection, but when a Chancellor can see that a bill undertakes to burden one or more defendants with matters with which they are not connected, and not responsible for, or that the bill is liable to create confusion by reason of the joinder of improper parties who have no privity with each other, or because several distinct matters have been blended, which have no connection with each other, he is at least called upon to give it a most careful scrutiny.

There is no occasion to go outside of this record to give illustrations of what we have in mind. The defendants named in this bill are sixteen persons who at sometime had been directors of this bank, and the executors and the distributees of another person who had in his lifetime been a director. It states the times during which the different persons were directors, but as it is alleged that on January 1st, 1898, the bank was solvent, and only complains of what was done after that time, it is not necessary to go back of that date. It charges that Messrs. Horner, Bauernshmidt, Hartman, Wool-

ford and McPhail, were directors from January 1st, 1898, to December 22nd, 1900; Mr. Brinton to May 3rd, 1898, Mr. Walpert to September 29th, 1898; Messrs. Ellis and Dickey to November 29th, 1898; Mr. Emerson to March 20th, 1899; Mr. Malster to January 19th, 1900, and that the following served to December 22nd, 1900, from the dates named, towit: Mr. Thompson from August 5th, 1898; Mr. Harden from October 14th, 1898; Messrs. Abercrombie and Hertel from January 12th, 1899, and Messrs. McDevitt and Marts from January 12th, 1900.

The first ground of complaint is that *"during their respective periods of service* the above-named members of the board of directors of said bank, in violation of sec. 5200 Revised Statutes of the United States, knowingly suffered and permitted loans to be made in excess of one-tenth of the amount of the capital of said bank actually paid in to each of the following persons and corporations, that is to say:" Then follow the dates, amounts, and names of the parties.    The first item is one of January 14th, 1898, for $10,000 loaned to the Automatic Telephone Exchange Co. in which Joshua Horner, the president of the bank, was an officer, and then a number of other loans to that company are mentioned, amounting in all to over $120,000. · The next complaint is for loans to "an irresponsible syndicate," of four sums amounting to $145,000; then $10,000 to the Columbia Iron Works, at a time when it already had $50,000, and then six sums at different times amounting to $22,140, to Joshua Horner, or companies he was interested in.    The next complaint is for declaring two dividends of $5,000 each, on December 30th, 1898, and June 30th, 1899, when the bank was in such a condition as to make them unlawful.    The seventh paragraph of the bill charges that the defendants permitted the president and cashier to make large loans to themselves, their relatives and companies in which they were interested, and although the amounts are stated, no dates are given and so far as we can see most of them are included in these mentioned above. The various items referred to in the bill amount to over $300,00 0

as being improperly loaned and paid out, but in the ninth paragraph the loss to the bank is alleged to be $200,000 by reason of the misconduct and neglect of the defendants.

The injustice likely to follow, if such a bill as this is to be sustained, will be best shown by taking individual instances, although some of them did not appeal and we suppose did not file demurrers.    It will be observed that Mr. Brinton ceased to be a director May 3rd, 1898, and Walpert died September 29th, 1898.    The only item alleged to have been unlawfully loaned before those dates was that of January 14th, 1898, for $10,000, while altogether there are thirty specific acts complained of in the bill—twenty-nine of which those two parties were in no wise connected with, so far as the bill discloses. It is true there may be some general allegations that might be said to be broad enough to include all the defendants, but if that be conceded, they are contradicted or limited by the more specific allegations, giving the dates, etc., of the transactions. Can Mr. Brinton or the representatives of Mr. Walpert be required to answer twenty-nine charges amounting to over $300,000, with which they had nothing to do, simply because they were directors when the one unlawful transaction was permitted?    Upon what principle of justice or of equity pleading can that be supported?    It is not even alleged that the loan of $10,000, with which they were connected, was not repaid to the bank, and as it was the first item complained of, it may have been included in the $100,000, or more, which must have been paid back from the unlawful loans, if the bank only lost $200,000, as the bill alleges.

Messrs. Ellis and Dickey, who retired on November 29th, 1898, could only have been connected with three transactions, amounting to a little over $17,000 and Mr. Emerson with only four of the loans amounting to something less than $22,000, and the one dividend of December 30th, 1898, and it is impossible to tell from the bill that all of those loans were not repaid before the bank failed.    Paragraph six names the directors that are charged with declaring the dividends unlawfully, and neither Brinton, Walpert, Ellis, Dickey, McDevitt

nor Marts is alleged to have taken any part in them, and they could not have done so, as they were not directors at either of the times named. Yet they are made defendants to a bill in which the declaration of dividends is made a separate and distinct charge, and it is easy to see what the investigation of that charge would involve. It necessarily means that the financial condition of the bank at those periods must be in-quired into and determined, and that may involve tedious and expensive accountings of experts, and taking much testimony. So with the numerous loans charged to have been unlawfully made by the officers, by reason of the negligence of the di-rectors in the discharge of their duties. Some of those items may require a large mass of testimony to be taken in order to ascertain the circumstances under which the loans were made, whether they were repaid, what directors knew or ought to have known of them, whether any of the directors of later dates were negligent in not requiring them to be paid, or not securing them, etc., etc. Are all of the defendants to be thus subjected to inconvenience, loss of time, fees of counsel and possibly expert accountants, Court costs incurred concerning matters in which they are not connected, simply because at some time they happened to be directors of the same bank? It would be very difficult, if not impossible, for the Court to ac-curately apportion the costs. There is not a "common lia-bility" within the meaning of that expression as used in *Fiery* v. *Emmert*, 36 Md. 464, when one director of a corporation is liable for one act and others are liable for twenty or more separate and distinct acts, although of the same general char-acter. It could as well be said that if there are four tax col-lectors in a county, all of whom are in arrears for taxes col-lected and not paid over, the County Commissioners could file a bill against the four to require an accounting, or if a dozen agents of insurance companies employed to collect premiums are in default, that the company could file one bill for an ac-counting against all of them. Of course, as we intimated in considering the first branch of this case, one board of directors may authorize or permit loans to be made for which members

of a subsequent board may be liable, if by their negligence or improper conduct they permitted the loans to be renewed, or improperly secured until losses were finally incurred; but when Mr. Brinton ceased to be a director on May 3rd, 1898, it is impossible to understand how he could be made liable for acts done after that time by other directors, or why he can be joined in a bill which charges many acts with which he was not connected, simply because he did take part in one act complained of.    And so, as to Messrs. Emerson, Walpert and others who are only alleged to have been connected with a few of the transactions complained of.    It certainly cannot be allowed merely because it may require two or three more suits than would be necessary if all were joined in one.    A multiplicity of suits although to be avoided when it can reasonably be done, is far preferable to one suit, which by reason of the joinder of different matters is likely to work injustice.

In *Griffin* v. *Merrill*, 10 Md. 364, the bill which prayed for an account of the concerns of two distinct partnerships—one of the defendants being a member of both firms and the other only a member of one—was held to be multifarious, although the last firm became the agent for collecting and disbursing the outstanding debts of the former, there being no reason shown why an account should be taken in reference to the agency.    In *White* v. *White*, 5 Gill, 359, there was a partnership consisting of four persons in 1814, when a fifth entered the firm.    In 1825 one of the original four withdrew and in 1835 another withdrew.    In 1843 the member of the firm who entered in 1814 withdrew and filed a bill for settlement and an account against the four original partners.    On demurrer the bill was held to be multifarious, and it was said that "The partners who retired in 1825 and 1835 may affirm that this bill is to burthen them with expenses which they are not bound to incur; to swell the pleadings with the state of the several claims, with which they cannot be said to have any connection after they respectively withdrew."    In *Fiery* v. *Emmert*, 36 Md. 464, this Court said, "As a general rule, however, we may say that in order to sustain a demurrer to a bill

on this ground, it must appear that several matters perfectly distinct and independent are joined in the bill against the same defendant, thus compelling him to unite in his answer and defend different matters wholly unconnected with each other; or the bill must contain the demand of several matters of distinct and independent nature against several defendants, thus imposing upon each defendant the costs incident to the trial of several claims against the other defendants, with which he has no connection, and in which he has no interest." Other cases might be cited, but we do not deem it necessary. We will only add that the case of *Simons' Sons Co.* v. *Maryland Tel. Co.*, 99 Md. 141, cited by the appellee does not throw any light on the case. There all the plaintiffs had a common interest in requiring the defendant to perform its duty. Nor is the case of *Fisher* v. *Parr* decisive of the question. The majority of the Conrt were of the opinion that the allegations of the bill were sufficient to include all of the defendants. Some of the acts complained of were, it is true, done by only part of the defendants, but the majority of the Court thought the bill sufficiently alleged negligence by all, to require them to answer. The demurrer in that case did not specifically rely upon multifariousness.

We are of the opinion that the demurrers should have been sustained on this ground at the instance of all the defendants who demurred, excepting Joshua Horner. As he is alleged to have been a director from the organization of the bank to its close, he is not in a position to demur on this ground. "A bill may be multifarious as to one defendant and not as to the others—the defect as to the one not being a ground of objection as to the others." *Miller's Eq. Pro.*, 135. Mr. Horner and some others were directors from the organization of the bank to the day it failed. We do not think that such of the defendants can complain by reason of there being so many different causes of action alleged in the bill, as all of them are more or less connected and relate to the same general question—the negligence and misconduct of the directors in the discharge of their duties from January 1st, 1898, to December

22nd, 1900, when the bank closed. Those who became directors after January 1st, 1898, and continued until the bank closed, might be liable for acts done before they entered the board; provided of course proper allegations are made and they are proven to have been negligent in not securing the bank, in granting renewals, or doing something for which they could be held; but those who ceased to be directors, such as Messrs. Emerson and Walpert (and the demurrers were filed by the former and the representatives of the latter) cannot be liable as directors for subsequent loans and other acts, with which they are charged in the bill, but which were done after the times their connection with the board was at an end. By reason of such persons being joined in this bill, we think it is liable to the objection of multifariousness. It is no longer necessary to dismiss the bill *in toto*, and leave can be granted the plaintiff to amend so as to relieve the bill of the objection of being multifarious. See cases cited in *Miller's Eq. Pro.*, 144.

*Third.* Mr. Emerson and the executors and distributees of Mr. Walpert also demurred on the ground that the causes of action against them did accrue or arise more than three years before the bill was filed. It was not filed until more than three years after Mr. Emerson and Mr. Walpert ceased to be directors, and hence we are not called upon to determine whether a director is entitled to the Statute of Limitations while he is still a director—although the act complained of may be of more than three years standing. The authorities are not altogether uniform on this question, but we are of the opinion that those which sustain the right of a director to rely upon the statute, if he is not sued within the statutory period from the time he ceases to be a director, are in accord with substantial justice and the object of Statutes of Limitations. Although directors are in a sense trustees, they do not have charge of what are known as technical and continuing trusts. They are implied trustees—just as every agent is a trustee for his principal and bound to exercise diligence and good faith. In *Spering's Appeal, supra,* THOMPSON, C. J., said, in the Court below in passing on a demurrer by one Churchman: "Directors in a cor-

poration may in some sense be regarded as trustees for parties pecuniarily interested in its operations, but this results from the nature of the duties they are to perform.   They are not technically trustees.   An attorney in fact bears a close resemblance to such a position, or perhaps· an attorney at law is still nearer, being an official representative.   It is settled that in these cases the Statute of Limitations is applicable.   Constructive trusts, it is well-settled, are within the statute."   The Supreme Court, through JUSTICE SHARSWOOD, spoke of the defense of limitations raised by Churchman and another defendant as follows:  "Upon the point as made in their case, each of them having entirely ceased to be a director more than six years before the bill was originally filed, we entirely concur in the opinion of the Chief Justice in Churchman's case." In *Williams* v. *Halliard*, 38 N. J. Eq. 373, which was a suit of a receiver of a bank against its managers, it was said, "The plea of the Statute of Limitations is a good defense to a suit in equity by a corporation against its directors for their misconduct in the management of its affairs."   In *Wallace* v. *Lincoln Bank*, 89 Tenn. 649 (S. C. 15 S. W. 448), which was a suit by a shareholder against the directors of a bank, the Court said, "Directors are not express trustees.   The language of SPECIAL JUDGE INGERSOLL in *Shea* v. *Mabry*, 1 Lea. 319, that 'directors are trustees,' etc., is rhetorically sound, but technically inexact.   *   *   *   At most they are implied trustees in whose favor the Statutes of Limitation do run.' "   In *Landis* v. *Saxton*, 105 Mo. 486, the same doctrine is announced, as it is in many other cases.

Indeed the same general principles were early announced in this State.   They are thus stated in the head notes to *Young v. Mackall*, 3 Md. Chan. 398.   "Trusts which are not affected by the Statute of Limitations are those technical and continuing trusts, which are not cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of Courts of equity.   But where the jurisdiction is concurrent, and the party is at liberty to proceed in either Court, the statute is equally a bar in both; and in all such cases equity adopts, by

analogy, the time prescribed by law." In *Weaver* v. *Leiman*, 52 Md. 708, JUDGE MILLER stated three propositions to be established: "1st. As a general rule the Statute of Limitations is a bar to a bill in equity for an account, just as it is a bar to an action of account in a Court of law. 2nd. But if a *cestui que trust* demands in equity an account from the trustee, and there is an express, subsisting and recognized trust, neither the period of limitations prescribed by statute, nor length of time is a bar to relief. 3rd. If, however, there is merely an implied or constructive trust arising by operation of law, Courts of equity, will, as a general rule, follow and obey the law by applying the statutory limitations of time." That directors are not regarded by this Court as trustees in the strict and technical sense, is well settled. *Booth* v. *Robinson, supra; Shaw* v. *Davis*, 78 Md. 318.

We are therefore of the opinion that those who have ceased to be directors (and that is as far as we are called upon to go in this case) are not precluded by reason of their former relation to the bank from relying on the Statute of Limitations as a bar to an action by the bank or its representative, or a stockholder, for negligence or misconduct in the discharge of their duties—either at law or in equity. Of course such questions as when the cause of action arose, or whether the plaintiff had been kept in ignorance by the fraud of the defendant, etc., might arise as in other cases, and would be governed by circumstances. When we come to apply the rule to this case, there would seem to be no question about the right of Emerson to rely on the statute as to the dividend declared on December 30th, 1898. That is the only one the bill charges him with, and it does not charge Mr. Walpert's estate with either. There can be no question as to whether the stockholders were kept in ignorance of this item, for it was paid to them, and surely it could not be said that the corporation did not have notice of it, when all of the stockholders had, to say nothing of entries in the books, examinations by the bank examiner, etc. Possibly a creditor might be in a position to show something that would be an answer to the statute, but

there is nothing in this bill that can be so regarded. In passing it may be well to say that this case presents rather a peculiar condition of affairs, inasmuch as the receiver represents creditors and stockholders. The bill does not show whether the creditors of the bank have been paid in full. If they have, manifestly the receiver should not be permitted to recover for the benefit of the stockholders by reason of the declaration of dividends, inasmuch as the stockholders themselves received the dividends and should not be permitted to hold the directors responsible for them.

In reference to the other claims, we do not think it sufficiently appears on the face of the bill that the receiver is barred from recovery. It was said in *Biays* v. *Roberts*, 68 Md. 510, that this defense may be availed of under a general demurrer "where from the face of the bill it can be seen that the bar applies, and where no facts are stated sufficient to relieve it from the operation of statute." It is true that the alleged unlawful loans participated in by Messrs. Emerson and Walpert were made, and that they ceased to be directors more than three years before the bill was filed, but the bill does not show that the corporation had sustained any damage or loss by reason of such loans for that length of time. We do not understand that directors could be made to respond in damages or to pay for such excessive loans unless some injury was done and loss sustained. It may be that it was not and could not have been ascertained that loss had or would ensue until sometime after the loans were made. It is not even shown in the bill when they were due. Sec. 5239 of the National Bank Laws makes directors who knowingly violate, or knowingly permit the officers of the bank to violate any of the provisions of those laws, liable for damages which the bank, its shareholders, or any other person shall have sustained in consequence of such violation. This bill proceeds on the theory that loss has been sustained, but it does not show when, and we are not prepared to say, under the circumstances, that the cause of action would necessarily accrue from the dates of the loans, or that the bill to recover for

them must have been filed within three years from the time those persons ceased to be directors. If the fact was such as to give them the benefit of the statute, it should be set up by plea or answer, inasmuch as the bill does not sufficiently disclose it to enable them to get the advantage of the defense by demurrer.

Although the cases cited in the note are of a different character from the one under consideration, the principle stated in the text of 19 *Am. & Eng. Ency. of Law*, 195, is applicable. It is there said: "Where the act complained of might or might not be injurious, and the plaintiff's right of action must depend upon its proving injurious, the cause of action cannot be considered as accruing until the injury has developed, and until then the statute does not begin to run."

*Fourth.* The demurrer by the distributees of Frederick Walpert must be sustained. They are simply described in the bill and made defendants "as distributees under the will of the said Frederick Walpert, deceased." There is no allegation that Mr. Walpert left any estate, or, if he did, that those named as distributees had received anything from it. It is suggested by the appellee that "if they are not beneficiaries, all they are required to do is to say so in their answer, and that will end their liability;" but we are not aware of any practice in this State that would permit a plaintiff to bring parties into Court to defend a bill in equity, unless the bill shows on its face that they are in some way liable.

Our conclusions on the questions before us may be briefly summarized as follows:

1st. That a Court of equity has jurisdiction.

2nd. That the bill is multifarious.

3rd. That the bill discloses that the claim against Isaac E. Emerson for the declaration of a dividend while he was a director is barred, but it does not sufficiently disclose such facts as to the other claims as would enable the Court to determine on demurrer that they are barred.

4th. That there are not sufficient allegations in the bill to hold the distributees of Frederick Walpert liable.

For the reasons stated, the decree will be reversed in part and affirmed in part, and the cause will be remanded for further proceedings. The Court below can grant leave to the plaintiff to amend the bill within such time as it may deem proper.

Nos. 37 and 38 (office docket) reversed and No. 39 (office docket) affirmed, and cause remanded for further proceedings, in accordance with this opinion—the appellee to pay (out of the estate in his charge) two-thirds and Joshua Horner the other third of the costs.

(Decided June 15th, 1906.)