# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 16, 1910.

GEORGE D. PENNIMAN ET AL., RECEIVERS, VS.

HENRY A. SCHULTZ AND FRANK A. FURST ET AL.

*Thomas Hughes* and *Clifton Doll Benson* for plaintiffs.

*Wm. Cotton, Crain & Hershey, Washington Bowie, Jr., John M. Requardt, Geo. Whitelock, Gibson & Smith* and *Albert E. Donaldson* for defendants.

STOCKBRIDGE, J.—

On the 5th day of June, 1903, receivers were appointed for the "City Trust and Banking Company." The corporation proved to be badly insolvent, and subsequently by an order special counsel were directed to institute proceedings against the individual members of the board of directors who had been elected at the annual meeting in January, 1903, and who had acted in that capacity until the date of the appointment of- the receivers. A bill was also filed against those who had acted as directors from January, 1902, to January, 1903, and the two successive board of directors were in part composed of the same persons.

The object of these proceedings was to hold personally liable the individuals composing these two successive boards for acts of negligence and inattention to their duties as directors whereby the assets of the company were wasted and dissipated, mainly through the making of improper loans, or loans inadequately secured.

The members of the board of directors were further alleged in the bills to be legally liable to the receivers for their inattention to duties as shown by their non-attendance at the meetings of the boards, and for their failure to select proper subordinates, and their failure to give timely notice and so seek to hold the Bonding Company, which had gone upon the bond of Frank J. Kohler, the treasurer of the company, thereby permitting the bond to lapse.

One of the directors, Kohler, had left the State before proceedings were instituted. Another, William R. Brewer, had deceased, leaving no estate. A third, John Redwood, was confessedly not liable, and settlements in the nature of compromises were made with a number of the directors by the receivers so that at the present time only the following members of the 1903 board are sought to be held liable, namely: Lewis Reitz, George B. Skinner, Washington Bowie, John D. Blake, Henry A. Schultz and Leopold H. Wieman, and of the 1902 board, the same individuals with the exception of Mr. Wieman, and with the addition of C. O'Donnell Lee and John Redwood.

The law is well settled in this State that directors of a financial institution can not be held liable collectively for

acts of the board, but each may be liable for his own acts, whether of omission or commission, and therefore the respective and relative liabilities of different members of a board may be entirely different.

Consideration will first be given to the liability of the gentlemen who composed the board of directors in the year 1903, and in this connection it is to be noted with regard to Mr. Wieman that there is no evidence whatever to show that he assented to his election as a member of the board to take effect at a time prior to the appointment of the receivers; on the contrary he had distinctly stated that he would not accept until a definite time in the future on account of then existing engagements; and this was so far acquiesced in by the board that he was not even notified of the meetings which were held by that board, and was only present at the last meeting, when he happened in more by chance than by design. Under such conditions he can in no manner be held liable or responsible for the short comings, if any, of that board.

The remaining members of the board of directors against whom these proceedings are still pending, were directors in both 1902 and 1903, with the exception of Lee and Redwood, and each of these stands upon an entirely distinct basis, and distinct also from the other directors.

In the case of Redwood, during the year 1902, he appears to have vigorously protested against the loans made to the secretary, and feeling that his protests were unheeded, he retired from the board. He had manifestly done what he could in the interest of the company, and it is conceded by the solicitors for the plaintiffs that no decree could properly be entered against him.

There remain the five gentlemen who were members both of the board of 1902 and of that of 1903, and the facts with regard to each of these is so nearly identical, that they may not improperly be considered together.

So far as a failure to attend meetings is concerned, the allegations of the bills with regard to these five gentlemen are not borne out by the evidence.

The law does not require that a director shall be present at every meeting of a board, only he shall give the matters of the corporation the same reasonable care and attention which he would exercise in his own affairs under like circumstance. Fisher vs. Sparr, 92 Md. 265.

Were these members of the board by their omission to notify the Bonding Company when the shortage of the treasurer was discovered in 1903 guilty of such gross and culpable negligence as thereby to render themselves liable?

When the defalcation of Mr. Kohler became apparent, what the members of the board did was to obtain from Kohler all of his property, at least all they could, and that was in amount considerably larger than the bond upon its face, and when realized upon produced for the company more than the amount of the bond.

The members of the board regarded the situation in which they were then placed, as one involving the exercise of judgment, whether to notify the Bonding Company, and, if possible, hold that company to the obligation of its bond, or, on the other hand, to permit the bond to lapse, make sure of the property which they had already obtained from Kohler, and endeavor to obtain from him still further refunds to an amount in excess of the penalty of the bond.

Having weighed all considerations, they determined in favor of the latter course, and this appears to have been done as an exercise of judgment, involving no element of fraud, nor seeking in any way to exonerate the short comings of the treasurer. To deny the directors the right to exercise such a discretion would carry with it a denial of the right to exercise the very faculties which are inseparably incident to the conduct of the business of a corporation; and I can not regard this as a sufficient ground upon which to hold these five directors to individual responsibility under the bill filed against the directors for the year 1903.

The next consideration deals with the improper loans, or loans inadequately secured, and these may be divided into two classes:

1. Loans made to Lee or other members of the boards of directors, and

2. Other improper loans.

Loans had been made to Lee, or a firm of which he was a member, in the year 1902. Whether or not these five

directors had any knowledge of Redwood's protests is not entirely clear, but be that as it may, there does not appear in the year 1903, to have been any new loans, or increase in the amount of any loan made to Lee, or to any other member of the directorate.

On the contrary, the amount of such loans, as compared with the year 1902, were considerably reduced. Some new notes were taken, but they were in the nature of renewal notes for a portion of a previously existing indebtedness which was gradually being reduced, and I do not understand the law to go to the extent of saying, that when an improper loan had been made, a director who subsequently obtains or requires a reduction in the amount of that loan, even if it be accompanied by a renewal for a portion of the original loan, is thereby guilty of such negligence as to render him personally liable.

The most serious aspect of this matter is that which has to do with the improper or inadequately secured loans made to Kohler and Pollack, and to concerns such as the Calvert Apartment Company, and the Baltimore Construction and Building Company, concerns in which Mr. Kohler appears to have had an interest, and what will be said in regard to these is applicable equally to the defendants as directors in 1902 and 1903.

The measure or standard of liability in such cases has been clearly defined in the Supreme Court of the United States, in the case of Briggs vs. Spaulding, 141 U. S. 132, in this language, that "if nothing has come to their knowledge to awaken suspicion of the fidelity of the president and cashier ordinary attention to the affairs of the institution is sufficient.

If they become acquainted with any fact calculated to put prudent men on their guard, a degree of care commensurate with the evil to be avoided is required, and a want of that care certainly makes them responsible." * * * "Whatever may be the case with a trustee, a director can not be held liable for being defrauded; to do so would make his position intolerable."

No one can read the evidence of the defendants in this case without coming to the conclusion that they were men of ordinary business experience only, in no way skilled or adept in the conduct of a banking business, and the conclusion is just as irresistable that the secretary and treasurer of the company, Mr. Kohler, was an adept at the manipulation of books and of accounts, to conceal that which did not suit his purpose to be known, or by entries to falsify the records. Witness after witness testified in direct contradiction of the minutes of the company.

The knowledge of the improper loans appears to have been sedulously withheld from the board of directors by reports submitted to them from time to time which, if they did not actually conceal the existing situation, did not disclose it, and were calculated to lead them to believe in the existence of a different state of affairs from that which is now disclosed.

These slips or reports as presented to the board of directors, were accompanied by verbal statements on the part of the secretary and treasurer, and substantiated by the president of the company, who, if not continuously present at the office of the company, was so present a considerable portion of the time.

Nor does it appear that these individual defendants could have discovered the true state of affairs if they had themselves gone through the books of the company. It was only to be fully understood by the skilled and expert accountant, as the result of long continued patient labor, and to hold the director personally liable for negligence when nothing has occurred to arouse or excite his suspicion because he did not perform a labor for which he was probably unsuited, or incur individually the expense of a long and tedious examination, would be to render the position of director in a financial corporation intolerable.

These directors are likewise sought to be charged with personal responsibility for a failure to select proper subordinates. This can apply only to the secretary and treasurer, Frank J. Kohler, for there is no evidence to show that any subordinate was either incapable or dishonest.

How, then, does it stand as regards Mr. Kohler? He was known to the present defendants only by a reputation which he had acquired in the business community, and that reputation was to the effect that he was a capable, energetic and aggressive man in furthering

the interests of any institution with which he was connected.

No question of his probity or honesty appears ever to have been suggested prior to his employment by the company. On the contrary the testimony is that the members of the board were congratulated as being fortunate to have secured the services of so capable and efficient an officer; and this sort of testimony affords no ground for decreeing a personal responsibility against these five directors.

There are two men to whom what has thus far been said, does not apply, namely, C. O'Donnell Lee and William F. Wheatly, who held the office of president of the company in the years 1902 and 1903, respectively.

Mr. Wheatley, however, has made a settlement with the receivers, and is no longer before this court. Mr. Lee was president of the company during all of 1902, and the evidence is undisputed that while such president loans were made to him in direct violation of law; and furthermore, it is inconceivable that occupying the position of president in constant, or practically daily attendance at the office of the company's business, he could have been ignorant of the improper, unauthorized loans—so-called—made to Kohler or his group of enterprises, or the illegal loans made to Pollack or other members of the board. The rule of liability as stated in Briggs vs. Spaulding, supra, has been reaffirmed and emphasized in this State in the case of Fisher vs. Parr, supra, and Emerson vs. Gaither, 103 Md. 564, and against the defendant, Lee, a decree will be entered, and against all other defendants the bills will be dismissed.